**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MADISON WEAVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 23-869 |
| GAT AIRLINE GROUND SUPPORT, | ) | Judge Nora Barry Fischer |
| INC.; CHRISTINA GAYLE; HOLLY | ) | |
| FOLLOWELL; and WILMA BEATY | ) | ECF No. 11 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION
ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

## I.      INTRODUCTION

In this case, Plaintiff Madison Weaver brings employment and civil rights claims against Defendants GAT Airline Ground Support, Inc. and its supervisory employees Christina Gayle, Holly Followell and Wilma Beaty.  As set forth in the First Amended Complaint, said claims arise from Plaintiff's employment by GAT Airline at the Pittsburgh, Pennsylvania International Airport. (Docket No. 10).  Presently before the Court is a Partial Motion to Dismiss brought by Defendants pursuant to Federal Rules of Civil Procedure 12(b)(6), together with Defendants' Brief in Support, Plaintiffs' Response in Opposition and the parties' further replies.  (Docket Nos. 11-12, 18, 20 and 22).  The motion has been fully briefed and the parties have not requested oral argument.  After consideration of the parties' arguments together with other applicable law, and for the following reasons, Defendants' Partial Motion to Dismiss will be granted in part and denied in part.

1

## II.     FACTUAL BACKGROUND

The following facts come from Plaintiffs' First Amended Complaint. (Docket No. 10). The Court assumes these allegations are true for purposes of the present motion. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

Plaintiff was employed, working four (4) days per week, as a GAT Customer Service Agent at the Pittsburgh International Airport, beginning in September 2021. (Docket No. 10 at ¶¶ 1, 29). Plaintiff's supervisors included Manager Gayle, Supervisor Followell and Human Resources representative Beaty. (*Id.* at ¶¶ 4-12). In October 2021, Plaintiff informed Gayle and Followell that she was pregnant and on March 24, 2022, she began her maternity leave, returning to work on approximately May 26th. (*Id.* at ¶¶ 30, 32-33). Plaintiff returned to work on a transitional, reduced schedule of two (2) days per week (3:00-10:00 p.m.); she informed Gayle and Followell that she was nursing and that her lactation specialist recommended she pump milk every three hours. (*Id.* at ¶¶ 35, 37, 39). Within the first month of her return to work on this *twice-weekly* schedule, Plaintiff was unable to pump in the recommended and needed intervals on seven (7) days; on some of these days she more than once was unable to pump as needed and on some she was required to take a pumping break when it was *not* needed. (*Id.* at ¶¶ 40-58). By June 23rd, Defendants' failure to accommodate Plaintiff's pumping needs had resulted in a painfully clogged milk duct; she therefore reached out to Gayle regarding her concerns and the next day met with Gayle and Followell. (*Id.* at ¶¶ 62, 65).

In the course of a meeting which left her anxious and uncertain, Plaintiff was (a) encouraged to take leave while breastfeeding and (b) told by Gayle that (i) GAT was only required to provide her 30 minutes to pump per day, (ii) Plaintiff could not be accommodated to pump "during operations", (iii) she would be required to pump solely in the "mother's lounge" on the

opposite side of the airport facility (approximately 15 minutes total travel time, entailing transportation by automated tram between airport terminals), and (iv) she would be required to arrive at work an unpaid hour early to allow time to pump immediately before her 3:00 pm start time. (*Id.* at ¶¶ 6, 65-78).

Plaintiff declined to arrive at work at 2:00 pm, noted that necessary pumping accommodations would be increasingly important as she transitioned back to a four-day schedule as planned, and requested another meeting - with a Human Resources ("HR") representative present. (*Id.* at ¶¶ 79-80, 84-88).   On June 28th, Plaintiff met with Beaty who incorrectly told her that the "reasonable break time" to which she was entitled under the Fair Labor Standards Act (the "FLSA") was limited to one (1) hour per day.  Plaintiff explained that the requisite walking and tram travel, setup, pumping and clean up would take 47 minutes per session; she would need to pump twice per day; and GAT was thus failing to provide reasonable accommodation. (*Id.* at ¶¶ 91-97).  Beaty became annoyed, "snarky", belittling and dismissive.  Beaty admonished Plaintiff that she could cut down on her cleaning time, was not a lawyer, and was being "emotional".  (*Id.* at ¶¶ 98-104).

Plaintiff contacted the Department of Labor (the "DOL") that same day and reported GAT's refusals to provide necessary pumping breaks; the next day she emailed Gayle and Beaty with details regarding GAT's failures to accommodate and received no reply.  (*Id.* at ¶¶ 105-07). The following day, June 30th, Plaintiff requested accommodation to pump as needed at 4:30 pm, which was denied. (*Id.* at ¶¶ 108-09).  When her requested accommodation to pump at 4:30 pm was denied again the next day, Plaintiff invoked her FLSA rights and pumped at that time nonetheless. (*Id.* at ¶¶ 110-12).   When Plaintiff reported to work on July 7th, she requested coverage to pump by 4:45 pm and was told by Gayle that she was required to wait until 5:30 pm.

(*Id.* at ¶¶ 113-15).  Plaintiff nonetheless invoked her rights and pumped in the mother's lounge (where she was interrupted by airport patrons' attempts to enter); she was then issued a write-up for leaving her workstation and sent home by Gayle. (*Id.* at ¶¶ 116-19).

On arriving to work on July 8th, Plaintiff was called into a meeting with Gayle during which Plaintiff proposed methods of accommodation, including (a) reassigning her to "work the gate" where the routine two-person assignment and closer proximity could both facilitate GAT's ability to provide coverage for necessary breaks and reduce the break time required, and/or (b) allowing her to pump in an office closer to her job duties. (*Id.* at ¶¶ 121-22).   Gayle, however, refused to discuss accommodations and suspended Plaintiff until she agreed to "follow company procedure." (*Id*. at ¶¶ 127-28).  Plaintiff did not return to work in accordance with Gayle's direction and on approximately July 14th learned that the DOL had contacted GAT regarding her complaint.  (*Id.* at ¶¶ 129-30).  Shortly thereafter, Plaintiff was removed from all scheduled shifts for the remainder of July and August.  (*Id.* at ¶ 131).

The following week, Plaintiff filed a charge of gender discrimination with the Equal Employment Opportunity Commission (the "EEOC"), initiated the Dispute Resolution Process through GAT's Human Resources Business Partner, and emailed Gayle and Beaty reiterating her continued desire to return to work with legally prescribed accommodations.  (*Id.*  at ¶¶ 132-35).  Beaty rebuked and disparaged Plaintiff and falsely asserted that Plaintiff had been called to return to work and declined.  (*Id.* at ¶¶ 136-39).  Later that day, Gayle emailed Plaintiff another write-up regarding July 7th - this time for (a) leaving her station without approval "and not taking important security documents", an added charge which Plaintiff specifically refutes, and for (b) refusing to work her "scheduled shift with scheduled breaks or follow company policy and procedures".  (*Id.* at ¶ 143–48).

4

Following Plaintiff's same-day reply noting Defendants' continued FLSA violations (*e.g.*, refusing Plaintiff's reasonable requests for breaks to pump when needed) and failure to discuss accommodations, Gayle indicated willingness to discuss "again ways for [Plaintiff] to pump while making sure [her] work is not affected" but failed to do so. (*Id.* at ¶¶ 149-52).   On August 10th, Followell (in a text including Gayle) requested that Plaintiff return her work badge until she was "ready to return to work" and could be reinstated, to which Plaintiff replied that she was awaiting response from Gayle regarding her desire to return to work with accommodation and without retaliation. (*Id.* at ¶¶ 154-56).   Still receiving no response, Plaintiff sent a "Letter of Preservation" to Gayle, the reply to which was, within a few hours, an Exit Interview notice from GAT's HR Department and deletion of her GAT Google account. (*Id.* at ¶¶ 157-62).   A week later, Plaintiff received a Notice of Separation indicating that she had been terminated as of August 10th for "job abandonment", a reason Plaintiff asserts was pretextual. (*Id.* at ¶¶ 163-67).   As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed. (*Id.* at ¶ 168).

### III.   PROCEDURAL HISTORY

In mid-July 2022, Plaintiff filed complaints with the DOL and the EEOC (Docket No. 10 at ¶¶ 22, 130).   She filed a supplemental Charge of Discrimination with the EEOC on approximately August 19, 2022 and received a Right to Sue notice on February 28, 2023. (*Id.* at ¶¶ 23, 25). Having exhausted her administrative remedies, Plaintiff filed her initial Complaint on May 5, 2023 and her First Amended Complaint (removing four individual defendants) on October 30th. (Docket Nos. 1 and 10).   As noted above, Defendants' Partial Motion to Dismiss was filed on November 20, 2023, with timely-filed Response in Opposition, Reply and Sur-Reply made by the parties. (Docket Nos. 11–12, 18, 20 and 22).

Plaintiff's First Amended Complaint brings the following claims: Counts I and II - violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*.; Counts III and IV – violations of the Providing Urgent Maternal Protections ("PUMP") for Nursing Mothers Act, Pub. L. No. 117-328, § 102(a)(1), 136 Stat. 6093, 6093 (2022); Counts V through VII – violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. 2000e(k); Counts VIII and IX - violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102 *et. seq*.; and Counts X through XII – violations of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et. seq*.[1] (Docket No. 10). Plaintiff alleges being subjected to discrimination, retaliation, and wrongful termination and seeks "declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post-judgment interest". (Docket No. 10 at ¶¶ 14-16.)

As Defendants' motion has been fully briefed, it is now ripe for disposition.

## IV.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plausibility exists somewhere between "possible" and "probable." The former necessitates factual allegations that are "more than merely consistent with a defendant's liability." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). But the latter only demands that the

---

[1] Count XII – Aiding and Abetting Discrimination Under the PHRA is the only claim brought against the Individual Defendants. (Docket No. 10 at ¶¶ 291-92).

court be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1937 (citations omitted). Detailed allegations are not necessary to survive a Rule 12(b)(6) motion to dismiss, however, the complaint must contain "more than labels and conclusions" or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a three-step process in evaluating a Rule 12(b)(6) motion to dismiss. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the court must set out the elements of the plaintiff's claim; second, identify and disregard any "formulaic recitation of the elements" or allegations that are "so threadbare or speculative" as to amount to nothing more than mere conclusory statements; and, finally, evaluate "the plausibility of the remaining allegations" by assuming their veracity and "construing them in the light most favorable to the plaintiff[.]" *Id.* at 327-328 (alteration, internal quotation marks, and citations omitted). In addition, courts must draw all reasonable inferences in favor of the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-791 (3d Cir. 2016).

V.     **RELEVANT STATUTORY PROVISIONS OF THE FLSA**

A.   **"Break Time for Nursing Mothers" Provisions of Section 207(r)**

29 U.S.C. § 207(r) requires employers to provide "*reasonable break time* for an employee to express breast milk for her nursing child for 1 year after the child's birth *each time such employee has need* to express the milk," although the employer is not "required to compensate an employee receiving [such] reasonable break time for any work time spent for such purpose." *Id.* at §§ 207(r)(1)(A) and (2) (emphasis added). The law further requires employers to provide "a

place other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." *Id.* at § 207(r)(1)(B).[2]

In its interpretive Notice, *Reasonable Break Time for Nursing Mothers*, 75 Fed. Reg. 80073 (Dec. 21, 2010), the Department of Labor observed that although the FLSA "does not require an employer to provide its employees with rest periods or breaks", any such time allowed "must be counted as hours worked when determining" if the FLSA minimum wage and overtime requirements have been met.  It further noted that an employee electing to use paid break time to express milk "must be paid in the same way that other employees are compensated for break time" (*i.e.*, using otherwise paid time to meet pumping needs does not convert it to unpaid time), although additional break time beyond a nursing employee's authorized paid break time could be uncompensated. *Id.* at *80074-75, 78; *see also* 2010 WL 5148902 (same).

The Notice also provides information intended to inform employers' provision of "reasonable break time", including that during its first six (6) months, a baby requires feeding every two to three hours and milk "must be removed by a pump about as frequently as the baby usually nurses".  The DOL thus expressly "expects that nursing mothers typically will need breaks to express milk two to three times during an eight-hour shift" and those breaks may or may not "track regular breaks and lunch periods."  It also cautions that impeding a nursing mother's ability to express milk may (a) cause a drop in her milk supply which could render her unable to continue nursing and/or (b) an infection.  With respect to a reasonable time frame, the DOL notes that the time necessary to express varies among nursing women (with 15 to 20 minutes typical), but that

---

[2] Section 207(r) was added to the FLSA effective March 2010.  In April 2023, it was fully repealed and replaced by the broader nursing mothers' protection/enforcement provisions of the PUMP Act enacted the previous December.  Effectively, the PUMP Act moved the FLSA's reasonable break provision from 29 U.S.C. § 209(r) to 29 U.S.C. § 218d.  *See* discussion, *infra*, Sections VI (A) and (B).

the proximity of the space(s) provided for pumping to the employee's work area, and the time needed for retrieving supplies, set up, efficiency of the pump, clean up and storage (all affected by the proximity of "amenities" such as a personal locker, sink, and refrigerator) should also be considered in the employer's determination – with the nursing mother -  of "what will constitute 'a reasonable breaktime' and how to incorporate the breaks into the work period." In assessing the reasonableness of accommodation, "the Department will consider all the[se reasonably necessary] steps . . . ." *Id.* at *80075.

Finally, the Notice observes - in accordance with the FLSA's Penalties provision applicable to sections 206 and 207 – that where an employer violates the requirements of section 207(r), "[i]n most instances, an employee may only bring an action for unpaid minimum wages or unpaid overtime compensation and an additional equal amount in liquidated damages.  Because employers are not required to compensate employees" for pumping breaks, there will "in most circumstances" be no "unpaid minimum wage or overtime compensation associated with" a failure to do so. *Id.* at *80078 (citing 29 U.S.C. § 216(b)).[3]  The DOL separately affirms the right of a nursing employee who (a) is "discharged or in any other manner discriminated against" because she has filed a complaint or instituted any proceeding regarding her nursing mother's break rights, to file a private cause of action for retaliation, or (b) is treated differently than employees who take breaks for other personal reasons, to file a "claim for disparate treatment under Title VII". *Id.* (citing sections 215(a)(3), 216(b)).

---

[3]  The Department thus leaves an expectation of some minimum wage violations under section 207(r) – as, *e.g.*, whenever a minimum wage nursing employee is *not compensated* for her pumping breaks.  In these cases, inclusion of that time in her "hours worked" would place the employer in violation of the FLSA's minimum wage provisions. Its Notice also contemplates, however, that actions for injunctive relief, and reinstatement and lost wages, for "unlawful violation of section 7(r)" would be brought in Federal Court by the DOL. *Id.* *Cf.* discussion, *infra*, Section VI(A)(1).

**B.  Retaliation Provisions of Section 215(a)(3)**

29 U.S.C. § 215(a)(3) of the FLSA prohibits retaliation against employees who exercise their rights under the Act, expressly providing that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint  or instituted or caused to be instituted any proceeding under or related to this chapter." *Id.  See also Dajti v. Penn Cmty. Bank*, CV 20-1483, 2021 WL 1209835, at *5 (E.D. Pa. Mar. 31, 2021) (holding that employee's oral complaints, expressions of concerns and attempts to address need for reasonable breaks with employer's HR department constituted protected activity within section 215(a)(3)).[4]  Where an employer violates the provisions of section 215(a)(3) of the title, the applicable FLSA Penalties provision creates liability "for such legal or equitable relief as may be appropriate to effectuate the purposes of [said sections], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

**VI.     DISCUSSION**

Defendants move to dismiss Plaintiff's claims under the FLSA, the PUMP Act and the ADA.  They also move to dismiss her Title VII claim of hostile work environment or, in the alternative, her claims of discrimination under Title VII and its parallel state law, the PHRA. Finally, Defendants move to dismiss Plaintiff's claim of aiding and abetting in violation of the PHRA against Individual Defendants Followell and Beaty.  (Doc No. 11).   Upon careful

---

[4]  The *Dajti* Court soundly observed that in the related context of Title VII protected activity includes "oral and written complaints and protests, whether formal or informal, to discriminatory practices prohibited by the statute." *Id.* (quoting *Parker v. Philadelphia Newspapers, Inc*., 322 F. Supp. 2d 624, 630 (E.D. Pa. 2004) (citing *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 287-88 (3d Cir. 2001) *See also Kasten v. Saint–Gobain Performance Plastics Corp*., 563 U.S. 1, 14, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011) (finding, in the context of the National Labor Relations Act,  that oral complaints can constitute protected activity provided that the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection").

consideration, the Court will grant dismissal of Plaintiff's claims under the PUMP Act (Counts III-IV) and the ADA (Counts VIII-IX) but will deny Defendants' motion in all other respects. The Court's rationale follows.

**A.  Claims Under the FLSA (Counts I and II)**

**1.  Count I - Provisions of Section 207(r) and Penalties Under Section 216(b)**

Defendants assert entitlement to dismissal of Count I of Plaintiff's First Amended Complaint on grounds that Plaintiff has not pleaded that GAT failed to pay her minimum wages or overtime, as required for relief under section 207(r).  (Docket No. 11 at ¶ 6).[5]  Defendants correctly quote the FLSA's Penalties provision that an employer in violation of section 207 "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."   29 U.S.C. § 216(b). And Plaintiff seeks "actual damages, liquidated damages, and other relief, pursuant to 29 U.S.C. § 216(b) as well as reasonable attorneys' fees, costs, and expenses."  (Docket No. 10 at ¶ 184).[6]

District courts have disagreed on the interpretation and scope of the applicable penalty provision. A few courts have held that section 207(r) creates no private right of action. *See e.g., Salz v. Casey's Mktg. Co*., No. 4:11-cv-03055, 2012 WL 2952998, at *2–4 (N.D. Iowa July 19, 2012).  Some expressly hold that personal time (sick leave, vacation, compensatory time, lunch and other breaks) used to pump where an employer is non-compliant with the protections of section 207(r) does *not* fall within that section's right of recovery. *See e.g., Allison v. City of Farmington,*

---

[5] *See also* Docket No. 10 at ¶¶ 177–84.

[6] Plaintiff's request thus clearly encompasses, *e.g.,* as "actual damages", unpaid wages or compensation and other relief available under section 216(b).

No. CV 18-401 KG/SCY, 2019 WL 2436266, at *3-4 (D.N.M. June 11, 2019) (holding "that use of compensatory or paid leave time does not fit within the narrow definition of 'unpaid wages' that are compensable under § 207(r)").   Others hold that expenditures of such accumulated or otherwise-entitled personal time *are* within the scope of liability contemplated by sections 207(r) and 216(b). *See, e.g., Lico v. T.D. Bank*, No. 14-cv-4729, 2015 WL 3467159 (E.D.N.Y. June 1, 2015) ("[I]f an employee needed to take longer breaks in order to travel to appropriate areas to take a nursing break, and was docked pay as a result, those lost wages would be compensable.").[7]

Within the jurisdiction of the Court of Appeals for the Third Circuit, our sister courts in the Eastern District of Pennsylvania have declined to dismiss claims under section 207(r) where the plaintiff was required to use other break or other personal time to pump.  *See Dajti,* 2021 WL 1209835, at *9 (where plaintiff was forced to spend paid break time - a "financial asset" that she could have spent in other ways - "rushing home to pump and return to the office", complaint plausibly alleged a cognizable injury under section 207(r));[8] *Newsome v. City of Philadelphia*, Civ. A. No. 19-5590, 2020 WL 6730946 at *3-4 (E.D. Pa. Nov. 12, 2020) (declining dismissal and holding hours of leave to be financial assets where non-compliance with section 207(r) necessitated that plaintiff use leave time);[9] *McCowan v. City of Philadelphia*, CV 19-3326-KSM, 2021 WL 84013, at *17 (E.D. Pa. Jan. 11, 2021) (holding plaintiff forced to use leave time to pump

---

[7] *See also Lampkins v. Mitra QSR, LLC*, No. 16-647-CFC, 2018 WL 6188779, at *5 (D. Del. Nov. 28, 2018) (collecting cases).

[8] The *Dajti* Court denied the defendants' motion in its entirety, including declining to dismiss Plaintiff's FLSA collective action under section 207(r).  *Id.* at *9

[9]  *See also Clark v. City of Tucson,* No. CV 14-02543-TUC-CKJ, 2018 WL 1942771, *6 (D. Ariz. 2018) ("Plaintiff's sick leave and vacation time are financial assets, which she allegedly spent to avoid being forced to express milk at noncompliant stations.") (cited with approval in *Newsome*).

alleged compensable injury under section 207(r)), with reliance on *Newsome*) (additional citations omitted).[10]

The Court concurs with the *Dajti* Court's observation that the DOL's indication there would be no recovery *in most cases* under section 207(r) does not in itself entitle defendants to dismissal.[11]   Plaintiff's First Amended Complaint does not expressly allege either that (a) she incurred unpaid compensation in the form of, *e.g.*, required use of paid break or personal leave time to pump, or (b) inclusion of unpaid pumping break time in minimum wage/overtime calculations placed GAT in violation of the FLSA.  Said Complaint does, however, allege that Plaintiff was prohibited from expressing milk "during operations", required to delay pumping from her "as needed" time to a specific later time, and suspended for failing to "follow company procedures" and refusing to "work her scheduled shift with scheduled breaks", all of which contribute to a reasonable inference and plausible allegation that Plaintiff was being required to

---

[10] In comparison, district courts more consistently hold that future wages otherwise available/scheduled but "lost" or deprived – *e.g.*, where a nursing employee is sent home, suspended or terminated for contesting her employer's non-compliance - are *not* within the scope of liability under section 207(r).  *See e.g. Newsome*, *supra* at *3-4 (including being sent home and placed on "no duty" status without pay as grounds for plaintiff's section 215(a)(3) retaliation claim, but grounding her section 207(r) claim only on employer's required use of leave time to pump); *Mayer*, 211 F.Supp.3d at 415 (concluding remedies for wages that would have been earned but for unlawful termination are available under anti-discrimination laws but not section 207(r)); *Vedros v. Fairway Medical Center, LLC*, 2020 WL 3128836 (E.D. La. June12, 2020) (holding that future wages lost when nursing employee was terminated by non-compliant employer were not within section 207(r)).  *But cf. Poague*, 369 F. Supp.3d 1180, 1198-99 (N.D. Ala. 2019) (finding that potential commissions - lost when employee was required to leave work to pump - were recoverable under section 207(r)).

Plaintiff alleges that because she did not feel comfortable returning to work four days per week, she was losing two days of compensation per week.  (Docket No. 10 at ¶ 90).  For reasons noted in the conclusion of this subsection (A)(1), the Court need not reach a determination on the scope of losses under section 207(r) at this juncture.  In addition, as discussed in Section VI(A)(2), *infra*, Plaintiff states a plausible claim of retaliation in violation of the FLSA, which could provide relief for back or unpaid wages and wages lost owing to unlawful adverse actions, such as termination.  *See e.g., Mayer*, 211 F.Supp.3d at 415 (holding liability for lost wages for termination falls under section 215(a)(3)); *cf. Vedros*, *supra* (noting, in holding lost wages to be outside section 207(r) liability, that plaintiff's FLSA retaliation claim was not challenged).

[11] *Dajti*, 2021 WL 1209835 at *8 (finding such notice "'entitled to respect' . . . only to the extent that [it has] the power to persuade" and concluding that it did not "dictate the outcome" of the case) (quoting *Christensen v. Harris Cty*, 529 U.S. 576, 586 (2000) (identifying forms of department interpretation that "lack the force of law" and are unentitled to *Chevron*-style deference)).

pump during scheduled breaks to which she was otherwise entitled and which would "not affect" her work.  Said Complaint also alleges that Plaintiff was a part-time and relatively new hire, airport Customer Service worker. [12]  *See* Section II (summation of these and other complaint allegations).

Moreover, the Court concurs with the holdings of its sister courts in the Eastern District of Pennsylvania and concludes that Plaintiff states a claim under section 207(r).  The Rule 12(b)(6) standard for dismissal requires Defendants to establish that under no facts consistent with the First Amended Complaint could Plaintiff be entitled to any relief; that they have not done.  The Court need reach nothing further in denying the motion to dismiss this claim.  *Newsome,* 2020 WL 6730946 at *4*, McCowan,* 2021 WL 84013, at *17, *Dajti,* 2021 WL 1209835, at *9  (each quoting *Lico v. T.D. Bank*, No. 14-cv-4729, 2015 WL 3467159 (E.D.N.Y. June 1, 2015) (denying dismissal of section 207(r) claim, noting that it is not the Court's role in deciding a motion to dismiss to make specific rulings regarding the scope of damages available, rather it is sufficient that plaintiff plausibly allege a legally cognizable injury).

### 2.  Count II – Retaliation Under Section 215(a)(3)

Count II of Plaintiff's First Amended Complaint alleges GAT's violation of the FLSA's general prohibitions against retaliation, as set forth in section 215(a)(3). (Docket No. 10 at ¶¶185–191)  Plaintiff's FLSA retaliation claim is, as under Title VII, analyzed under "the familiar burden-shifting framework articulated in *McDonnell Douglas*." *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002).  Accordingly, "'[t]o state a prima facie case of retaliatory

---

[12]  As noted *supra*, under the compliance calculation provisions of the FLSA, it appears that a nursing employee paid minimum wage must be paid for *all* her breaks, including "reasonable" work-hours/shift pumping breaks, for the employer to maintain compliance with its FLSA minimum wage obligations. It is not yet clear, and need not be at this juncture, how these provisions may affect Plaintiff's entitlement to unpaid minimum wage/overtime compensation pursuant to Section 216(b).

And as Plaintiff has stated a plausible claim under section 207(r), the sufficiency and privacy of the room provided by GAT to its nursing employees, *i.e.*, Plaintiff, is also appropriately a question for another day.

discrimination under the FLSA, a plaintiff must plead that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against [her], and (3) there was a causal link between the plaintiff's protected action and employer's adverse action.'" *Szewczyk v. United Parcel Serv., Inc*., No. 19-1109, 2019 WL 5423036, at *6 (E.D. Pa. Oct. 22, 2019) (quoting *Bedolla v. Brandolini*, No. 18-146, 2018 WL 2291117, at *3 (E.D. Pa. May 18, 2018)). *See also Berrada v. Cohen*, 792 F. App'x 158, 164 (3d Cir. 2019) (citing *Darveau v. Detecon*, 515 F.3d 334, 340 (4th Cir. 2008)).[13]

Defendants claim entitlement to dismissal because "Plaintiff has failed to plausibly allege a violation of the provisions of the FLSA requiring employers to provide breaks for nursing mothers." (Docket No. 12 at 5). To the contrary, the provisions of the FLSA and the DOL's Notice regarding reasonable break time for nursing mothers are exceedingly and consistently clear that Plaintiff has a right to bring, and that the allegations made *sub judice* plausibly state, a claim for retaliation under section 215(a)(3). 29 U.S.C. § 207(r); *id.* at § 215(a)(3); 75 Fed. Reg. 80073.

More particularly, and as detailed in Section II, *supra*, Plaintiff plausibly alleges that she was (a) treated dismissively and demeaningly for requesting pumping breaks within her FLSA rights, (b) required to conform such breaks to GAT's schedule and denied reasonable pumping breaks as needed, (c) suspended for leaving her work station to pump when needed, and (d) pretextually terminated for making multiple oral and written complaints, instituting proceedings and/or filing an EEOC Charge regarding GAT's failures and refusals to comply with her rights to the accommodations afforded nursing mothers under section 207(r). The First Amended

---

[13] *Prima facie* claims of retaliation under Title VII require a slightly different second element. Under Title VII, the plaintiff need not prove an ultimate adverse employment action, because the scope of Title VII's provision extends beyond employment-related retaliatory acts. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Rather, the plaintiff only needs to prove a "materially adverse" action, one which "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id.* at 68, 126 S.Ct. 2405 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The first and third elements are the same. *See Wilkerson v. New Media Tech. Charter Sch. Inc*., 522 F.3d 315, 320 (3d Cir. 2008).

Complaint includes further specific allegations in support of Plaintiff's highly plausible claim that she engaged in statutorily protected activity and was subjected to adverse employment action (discipline, removal from the schedule, suspension, and termination) for notice-sufficient complaint and pursuit of her FLSA rights to the reasonable provision of breaks to express milk each time she needed to do so.   (Docket No. 10).[14]

Plaintiffs who, as here, bring a separate FLSA claim for retaliation are permitted to pursue it, even while being denied pursuit of their section 207(r) claim. *Dajti*, 2021 WL 1209835, at *10 (maintaining section 207(r) claim and holding that FLSA retaliation claim asserted plausible connection between complaints alleging non-compliance with pumping rights and termination in violation of section 215(b)(3)); *Mayer v. Professional Ambulance, LLC*, C.A. No. 15-462-S, 211 F.Supp.3d 408, 414-16 (D.R.I. 2016) (concluding future wages lost by wrongful termination were not within section 207(r) but that employee had plausible claim for remedy under section 215(1)(3)).

### B.  Counts III and IV - Violation of and Retaliation Under the PUMP Act

Counts III and IV of Plaintiff's First Amended Complaint bring claims for GAT's violation of the PUMP Act's provisions protecting nursing mothers and for further violation in the form of retaliation, respectively.   (Docket No. 10 at  ¶¶ 192–98; 199–202). In short, the period during which Plaintiff alleges actions by Defendants giving rise to liability, *i.e.* May through August 2022, predates the PUMP Act's passage in December 2022 (as well as its effective date in late April 2023). *See* PUMP for Nursing Mothers Act, Pub. L. No. 117-328, § 102(a)(1), 136 Stat. 6093,

---

[14] The Court notes, importantly, that Plaintiff's expectations and requests for breaks to pump (a) at times proximate to her new baby's nursing schedule and (b) for lengths of time that reasonably reflected the distance to GAT's allowed location and available supportive facilities (locker, sink, refrigeration) were in accord with the DOL's own expectations of "reasonable" nursing employee accommodations - *i.e.*, that pumping breaks might or might not "track" regular shift breaks and that employers should include all necessary "steps" in the calculation of break time.  *See* Section V(A); *Reasonable Break Time for Nursing Mothers*, 75 Fed. Reg. 80073 (Dec. 21, 2010).  The constraints allegedly imposed, and denials made, by GAT were not.

6093 (2022) (repealing and replacing former 29 U.S.C. § 207(r)).  *See also Perata v. City and Cnty. of San Francisco*, No. 21-cv-02819-TSH, 2023 WL 4537695, at *25 n. 18 (N.D. Cal. July 13, 2023) (PUMP Act's amendment to remedies took effect April 29, 2023).

As Defendants duly observe, Congress did not explicitly provide that the Act would apply retroactively, yet its application to the case *sub judice* would have just that effect on GAT by increasing its potential liability for failure to provide the statutorily required accommodations. (Docket No. 12 at 7) (citing *Landgraf v. USI Film Prods*., 511 U.S. 244, 280 (1994)).[15]  More specifically, under the PUMP Act employers may also be found liable for "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). *Compare* 29 U.S.C. § 207(r); Section V(A), *supra*.  The claims will therefore be dismissed with prejudice.

### C.  Counts VIII-IX – Violation of and Retaliation Under the ADA

Counts VIII and IX of the First Amended Complaint allege discrimination and retaliation under the ADA, respectively. (Docket No. 10 at ¶¶ 255–65; 266–74).

To establish a *prima facie* case of disability discrimination, a plaintiff must establish that she was (1) disabled within the meaning of the relevant statute; (2) qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) discharged or adversely affected because of the disability.  A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(C)). Courts have generally held that, without *e.g.,* complications, neither normal pregnancy nor normal

---

[15] In *Landgraf*, the Supreme Court held that where Congress has not expressly prescribed a statute's proper reach, the traditional presumption teaches that it will not operate retroactively if it would impair rights possessed at the time, increase liability for past conduct, or impose new duties upon completed transactions. *Id.*

post-pregnancy qualify as an actionable disability. *See, e.g.*, *Brennan v. National Telephone Directory Corp.*, 850 F.Supp. 331, 344 (E.D. Pa. 1994); *Mayer*, 211 F.Supp.3d at 420. In short, the need to express milk is not a disability, nor is a clogged duct. *See e.g.*, *Tsepenyuk v. Fred Alger & Co., Inc.*, No. 22-831-cv, 2022 WL 912882 (S.D. N.Y. Mar 29, 2022). Plaintiff provides, and the Court has found, no cases holding that either a nursing mother's need to express milk or, relatedly, a clogged duct constitutes a "disability" within the scope of the ADA.[16] The claims will, therefore, be dismissed with prejudice.

### D.  Claims Under Title VII (Counts V-VI) and the PHRA (Counts X and XII)

As discussed below, Title VII prohibits employers from taking an adverse employment action against an employee on the basis of the individual's sex, including on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C.A. § 2000e–2, 2000e(k). Plaintiff's Title VII and PHRA claims are analyzed together. *See* *Dajti,* 2021 WL 1209835, at *3*; *Woodson v. Scott Paper Co*., 109 F.3d 913, 919-20 (3d Cir. 1997); *see also* *Keita v. Delta Cmty. Supports, Inc*., Civ. A. No 19-5967, 2020 WL 6528749, at *2 (E.D. Pa. Nov. 5, 2020) ("The relevant provisions of each statute have 'nearly identical language,' and require the same elements to establish a prima facie claim." (quoting *Driscoll v. Lincoln Tech. Inst*., 702 F. Supp. 2d 542, 545-46 (E.D. Pa. 2010)).[17]

---

[16] To the extent that Plaintiff avers in her Response in Opposition that her post-pregnancy condition substantially limited her ability to perform major life activities within the meaning of the Act, or that Defendants perceived her as having a disability related to her lactation needs, the Court finds that the First Amended Complaint fails to state a plausible claim under the ADA on either basis.  (Docket No. 18 at 17).

[17] As our sister Court for the Eastern District of Pennsylvania has noted in *Dajti:*

'While the Third Circuit has not expressly resolved whether 'a complaint based [solely] on the need to express breast milk is cognizable under Title VII,' other courts have so held." *Mercado v. Sugarhouse HSP Gaming, L.P*., Civ A. No. 18-3641, 2019 WL 3318355, at *5 (E.D. Pa. July 23, 2019) (alteration in original) (citing *Page v. Trustees of Univ. of Pa*., 222 F. App'x 144, 145 (3d Cir. 2007), *E.E.O.C. v. Houston Funding II, Ltd*., 717 F.3d 425, 428 (5th Cir. 2013); *Hicks v. City of Tuscaloosa, Alabama*, 870 F.3d 1253, 1259 (11th Cir. 2017)).

### 1. Hostile Work Environment Under Title VII and the PHRA (Counts VI and XII)

Count VI of the First Amended Complaint alleges GAT subjected Plaintiff to a hostile work environment in violation of Title VII. (Docket No. 10 ¶¶ 216–37).[18] In response, Defendants assert that Plaintiff has failed to allege severe or pervasive conduct because she was given regular breaks and a private place to pump, and that GAT's protocols were a "mere inconvenience, impatience, or irritation at best." (Docket No. 12 at 9) (quoting *Newsome*, 500 F. Supp. 3d at 343).[19] These assertions notwithstanding, the factual allegations of Plaintiff's First Amended Complaint are sufficient to state a plausible claim for severe and/or pervasive conduct.

As detailed in Section II, *supra*, Plaintiff alleges that she experienced immediate, continuing and escalating hostile working conditions in her necessary interactions with, and compliance with the job requirements and conditions set by, the Individual Defendants - who each had authority over her. Plaintiff attests, for example, that she was discouraged from continuing to work while nursing, her physiological and medical needs were treated dismissively and impeded, she was demeaningly and distressingly forced to delay her need to pump to conform to GAT's

---

*Dajti*, 2021 WL 1209835, at *3.

[18] "Reduced to its most basic components, an actionable hostile work environment requires proof that Plaintiff was subjected to a level of gender or race-based harassment which was 'severe or pervasive' enough to create a working environment which is both subjectively and objectively abusive or hostile to female . . . employees." *McCowan*, 2021 WL 84013, at *24 (quoting *Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 411 (D.N.J. May 12, 2003)) (additional citations omitted); *see also Chinery v. Am. Airlines*, 778 F. App'x 142, 145 (3d Cir. 2019) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). In determining whether harassment rises to the level of an actionable hostile work environment, the courts consider the "totality of the circumstances . . . including the frequency of the discriminatory conduct, its severity, whether it [was] physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interfere[d] with an employee's work performance." *Harris v. SmithKline Beecham*, 27 F. Supp. 2d 569, 577 (E.D. Pa. 1998) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). *See also* Docket No. 18 at 10-11 (noting that severity and pervasiveness "are alternative possibilities" with the latter potentially met by "less objectionable" conduct) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)).

[19] Defendants do not argue that the alleged harassment was not "intentional discrimination"; nor do they contest that Plaintiff, subjectively, was detrimentally affected. *See Lampkins v. Mitra QSR, LLC*, No. 16-647-CFC, 2018 WL 6188779, at *5 (D. Del. Nov. 28, 2018) (observing the same).

shift/break schedules and to pump when she did not need to, she was repeatedly rebuffed and derided for attempting to obtain legally-required accommodations to meet her reasonable lactation needs and was forced to tolerate the Individual Defendants' treatment, and she was falsely and hostilely accused of neglecting her job duties, refusing offered return to the work schedule, and (ultimately) of abandoning her job. *See Lampkins v. Mitra QSR, LLC*, No. 16-647-CFC, 2018 WL 6188779, at *5 (D. Del. Nov. 28, 2018) (denying summary judgment where allegations included supervisor's discouragement and complaints, denials of needed pumping breaks and negative health/nursing consequences).[20]

The Court further observes that the standard of severe or pervasive conduct is appropriately considered in its temporal context. Here, Plaintiff's claim relates to conduct occurring during the very brief window of reduced part-time employment between her return from maternity leave at the end of May and her suspension for failure to comply with company policy and scheduled breaks on July 8, 2022. The incidents alleged in this time frame are sufficient to support Plaintiff's hostile work environment claim. *See Mayer*, 211 F.Supp.3d at 419–20 (declining to find as a matter of law that conduct alleged was not severe or pervasive given plaintiff's "very short tenure").

Finally, the determination before the Court at this juncture is not what Plaintiff must reasonably establish to prevail on her hostile working environment claim at trial, but only what she must plead to be permitted to proceed through discovery to adjudication on the merits. *Id.*

---

[20] Although additional allegations in *Lampkins* were more egregious, the *Lampkins* Court identified the analogous conditions as factors in its holdings that plaintiff had not only stated a plausible claim but had evidenced material questions of fact. *Id.* (observing that (a) it was "undisputed that Lampkins' supervisor discouraged her from pumping at work" and (b) her ability to nurse her baby was adversely affected because she was "not permitted to pump" as needed); *id.* (concluding that "[i]n light of the totality of these circumstances, which [employer] concedes were discriminatory, a reasonable jury could conclude that Lampkins faced severe or pervasive harassment that would detrimentally affect an objectively reasonable person"). *Cf. id.* (also denying summary judgment on claim for Title VII discrimination in form of constructive discharge).

### 2.  Discrimination under Title VII (Count V) and the PHRA (Count X)

Counts V and X of Plaintiff's First Amended Complaint allege, respectively, that GAT violated Title VII and parallel state law under the PHRA by discriminating against her on the basis of her pregnancy by failing to provide meaningful accommodation for expressing milk during the workday, impeding her from meeting her lactation needs, and subjecting her to adverse employment actions for pretextual reasons. (Docket No. 10 ¶¶ 203–15; 275–85).

In an apparent misunderstanding of a plaintiff's right to assert alternative theories of liability in violation of Title VII, Defendants contend that Plaintiff may only maintain a claim that may plausibly be established by evidence meeting the elements of *either* a "hostile work environment" *or* "disparate treatment" – but not both.  (Docket No. 12 at 9-10) (asserting that if the Court does not grant dismissal of Count VI, it should grant dismissal of Counts V and X because these claims have inappropriately "commingled" factual allegations).  Defendants cite – and this Court finds - no case law reasonably supporting this interpretation of the law.[21]  To the contrary, hostile work environment and disparate treatment claims are distinct from one another and are based on different legal theories and, as such, they may be maintained and each subject to consideration of the evidence in support of their different proofs. *See Rospendowski v. Columbia Cty. Sheriff*, No. 4:16-CV-00526, 2020 WL 5602967, at *3 (M.D. Pa. Sept. 18, 2020); *Achebe v. Bloomsburg Univ. of Pennsylvania*, No. 4:18-CV-01188, 2021 WL 3511138, at *3 (M.D. Pa. Aug. 10, 2021). *See also* Docket No. 18 at 13; Fed. R. Civ. P. 8(d)-(f).[22]  Moving on, then, to the claims:

---

[21] Plaintiff adequately address the errors and distinguishes the cases in Defendants' argument that the claims *sub judice* are "inappropriately commingled" by, *e.g.*, noting the self-evident analytical impropriety of a plaintiff's attempt to prove one claim via the framework or elements of the other.  (Docket No. 18 at 14-15).

[22] Rule 8 expressly allows a party to present two or more statements of a claim alternatively, either in a single count or in separate ones.  Because Rule 8 allows parties to plead and explore alternative (indeed, even inconsistent) factual bases/theories and because it further commands that pleadings must "be construed so as to do justice,"

It is well established that Title VII prohibits employment discrimination (as well as a hostile work environment) because of or based on an employee's sex. *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 n.3 (3d Cir. 2017) (citing 42 U.S.C. § 2000e–2(a)). And the PDA amended Title VII to make clear that its "prohibition against sex discrimination applies to discrimination based on pregnancy" and that "employers must treat 'women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.'" *Young v. United Parcel Serv., Inc.*, 525 U.S. 206, 135 S. Ct. 1338, 1343 (2015) (citing 42 U.S.C. § 2000e(k)).

Because the First Amended Complaint does not allege direct evidence of discrimination, Plaintiff's discrimination claims are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Young*, 135 S. Ct. at 1345 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). A complaint may state a *prima facie* case that the denial of an accommodation constituted disparate treatment under Title VII or the PHRA by alleging the following four factors: (1) "that [the plaintiff] belongs to the protected class," (2) "that she sought accommodation," (3) "that the employer did not accommodate her," and (4) "that the employer did accommodate others 'similar in their ability or inability to work.'" *Id.* at 1354. However, a complaint may also satisfy the fourth factor if it alleges facts that "otherwise show a causal nexus" between Plaintiff's membership in a protected class and the adverse employment action. *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014) (citation omitted).[23]

---

Plaintiff's alternative theories of liability under Title VII may proceed as separate counts.

[23] *See also Dajti*, 2021 WL 1209835, at *5 ("A causal connection may be shown by 'an employer's inconsistent explanation, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive.'") (quoting *Smith v. RB Distribution, Inc.*, Civ. A. No. 20-900, 2020 WL 6321579, at *10 (E.D. Pa. Oct. 28, 2020) (citing *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017)).

The First Amended Complaint alleges that (a) Plaintiff repeatedly sought reasonable nursing employee accommodations, (b) GAT encouraged her to take leave instead and required that she conform her pumping to otherwise scheduled break times, (c) Plaintiff was subjected to disparaging and dismissive interactions with supervisors who refused to cooperate in reasonable resolution of her need for accommodation, and (d) she was suspended in approximately five (5) weeks, false accusations were thereafter added to her suspension write-up, and she was pretextually terminated for abandoning her job approximately four (4) weeks later.[24]

Thus, construing the allegations of the First Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff plausibly alleges both (a) causal nexus between her membership in a protected class (here, pregnant and breastfeeding women) and GAT's adverse employment decisions and (b) a claim of discrimination in violation of Title VII and the PHRA. *See Dajti*, 2021 WL 1209835, at *3–4 (similarly declining to dismiss Title VII and PHRA discrimination claims where plaintiff adequately stated claim under *Young* and *Greene, supra*); *id.* (finding evidence of causation, including antagonistic conduct or animus against the employee and pretextual reasons given by employer for the adverse conduct).[25]

### 3.  Aiding and Abetting under the PHRA (Count XII)

In Count XII of her First Amended Complaint, Plaintiff alleges that Individual Defendants Gayle, Followell, and Beaty, each had supervisory authority over her, and each aided and abetted discrimination in violation of the PHRA.  (Docket No. 10 ¶¶ 290–92).[26]  *Cf. Clinkscales v.*

---

[24] *Cf. Clair v. Agusta Aerospace Corp.*, 592 F. Supp. 2d 812, 819 (E.D. Pa. 2009) (noting that Third Circuit has held that "a plaintiff may demonstrate that the decision to terminate her was likely motivated by discriminatory animus where 'those exhibiting discriminatory animus influenced or participated in the decision to terminate'") (quoting *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 285-86 (3d Cir. 2001)).

[25]  *See also Mayer*, 21 F.Supp.3d at 417-19 (holding that nursing employee stated claims under Title VII for both hostile work environment and discrimination in the form of discharge).

[26] The PHRA prohibits "any person" from:

*Children's Hosp. of Phila.*, No. 06-3919, 2007 WL 3355604, at *8 (E.D. Pa. Nov. 9, 2007) ("[T]he Third Circuit has distinguished between coworkers, who cannot be held liable under section 955(e), and supervisors, who can be held liable under that section.")

Defendants assert entitlement to dismissal of the claims - with respect to Followell and Beaty only - on grounds that (a) Plaintiff's assertions regarding their supervisory authority over her are conclusory and (b) their behavior was ancillary to any misconduct.  (Docket No. 12 at 14, 16).  Plaintiff's factual assertions of each Individual Defendant's "supervisory authority" over her and apparent invocation and/or exercise of that authority are, however, more than sufficient to state a plausible claim of aiding and abetting discrimination against her.

More specifically, and by way of example, Plaintiff asserts that Followell (a) was present and participating in her supervisory capacity at the meeting in which Plaintiff was encouraged to take leave while nursing and denied the reasonable FLSA  pumping break accommodations and (b) later required Plaintiff to return her work badge until she was ready to return to work in compliance with company protocols that violated her nursing mother's rights (Docket No. 10 at ¶¶ 65-78, 154-56).  Plaintiff asserts that Beaty, as Human Resources representative, met with Plaintiff, belittled and dismissed both Plaintiff and her physiological needs as a nursing mother, mispresented the FLSA's requirements to her, refused to respond to or accommodate her requests for reasonable pumping breaks when needed, and falsely asserted that Plaintiff had been offered and declined to return to work – subsequent to which Plaintiff was terminated for purported job

---

aid[ing], abet[ting], incit[ing], or coerc[ing] the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be unlawful discriminatory practice.

43 Pa. Stat. & Con. Stat. § 955(e).

abandonment. (Docket No. 10 at ¶¶ 98-104, 106-10, 132-39). *See McCowan,* 2021 WL 84013, *15-16; *id.* at 33; *Ahern v. Eresearch Tech., Inc.*, Civ. A. No. 15-5911, 183 F.Supp.3d 663, 669 (E.D. Pa. 2016) (individual liability for aiding and abetting may be "imposed for a supervisor's own discriminatory conduct or their failure to take action against discrimination experienced by the employee"); *Clinkscales*, 2007 WL 3355604, at *8 (denying motion to dismiss on aiding and abetting claim where the plaintiff's "allegations, when read generously, assert that [individual defendants], as human resources officials, had the authority to stop the discriminatory conduct but failed to do so, thus aiding and abetting the discrimination in violation of section 955(e)").

## VII.    CONCLUSION

Based on the foregoing, Defendants' Partial Motion to Dismiss (Docket No. 11) is granted as to Plaintiff's claims under the PUMP Act at Counts III and IV and claims under the ADA at Counts VIII and IX.  Said Counts of Plaintiff's First Amended Complaint will be dismissed, with prejudice.  Defendants' Partial Motion to Dismiss will be denied in all other respects. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  February 20, 2024
cc/ecf: All counsel of record