**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY PROL, ESQ.
PA Attorney ID: 319524
NJ Attorney ID: 125782014
1628 Pine Street
Philadelphia, PA 19103
Phone: 215-391-4790
Fax: 215-893-5288
Email: tim@dereksmithlaw.com
*Attorneys for Plaintiff Madison Weaver*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MADISON WEAVER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 2:23-cv-869 |
| | : | |
| v. | : | |
| | : | |
| GAT AIRLINE GROUND SUPPORT, | : | |
| INC.; CHRISTINA GAYLE; HOLLY | : | |
| FOLLOWELL; TERRANCE COOGAN, | : | |
| KIRSTEN PORTER, SALLY GARZO, | : | |
| and WILMA BEATY | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff opposes Defendant's motion for Summary Judgment. Plaintiff further relies upon the following memorandum of law in opposition to Defendant's motion for Summary Judgment and requests the Court deny same.

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF MATERIAL FACTS ............................................................2

III. LEGAL STANDARD ON SUMMAYR JUDGMENT......................................2

IV. LEGAL ARGUMENT..........................................................................................3

    A. **Since Defendants violated FLSA and genuine issues of fact exist, Defendants' motion for summary judgment must be denied. (Count I)** ................................................3

    B. **Since Defendants discharged and discriminated against Plaintiff for engaging in protected activity under the Act, Defendants' motion for summary judgment as to FLSA retaliation must be denied. (Count II).** ............................................ 7

    C. **Since genuine issues of material fact exist, Defendants are not entitled to summary judgment on Plaintiff's Title VII sex/pregnancy discrimination claim. (Count V).** ................ 8

    D. **Since Plaintiff experienced severe and pervasive treatment creating a hostile work environment, Defendants' motion for summary judgment must be denied. (Count VI).**.................................................................................................... 11

    E. **Since Plaintiff experienced retaliation as defined in Title VII after she engaged in protected activity, Defendants' motion for summary judgment should be denied. (Count VII).** .................................................................................... 13

    F. **Since Defendants have violated the Pennsylvania Human Relations Act (PHRA)'s provisions prohibiting Discrimination and Retaliation, Defendants' motion for summary judgment should be denied. (Count X and XI).** ........................................ 14

V. CONCLUSION ...................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Authority</u>                                                                 <u>Brief Page Number</u>

*Case Law:*

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).............................................2

*Atkinson v. Lafayette College*,
460 F.3d 447, 454 (3d Cir. 2006)...........................................................................14

*Celotex Corp v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)............................................2

*Cononie v. Allegheny General Hospital*,
29 F. App'x 94 (3d Cir. 2002)...............................................................................13

*Dici v. Pennsylvania*,
91 F.3d 542, 552-53 (3d Cir. 1996).......................................................................14

*Dajti v. Empire Acquisitions*,
LLC, No. 18-2043, 2021 WL 1209835, at *8-10 (D.N.J. Mar. 31, 2021)...............4,7

*EEOC v. Houston Funding II, Ltd*,
717 F.3d 425, 428 (5th Cir. 2013) ..........................................................................9

*Faragher v. City of Boca Raton*,
524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)...............................11

*Huston v. Procter & Gamble Paper Prods. Corp*,
568 F.3d 100, 104 (3d Cir. 2009)..........................................................................11

*Kaucher v. County of Bucks*,
455 F.3d 418, 423 (3d Cir. 2006)............................................................................2

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 587 (1986).........................................................................................3

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57, 67 (1986).........................................................................................11

*Newsome v. City of Philadelphia*,
500 F. Supp. 3d 336, 341-42 (E.D. Pa. 2020)..........................................................7

*Wesley v. Hollis*,
2007 WL 1655483 (E.D.Pa., 2007) .......................................................................2

*Federal Statutes:*

29 U.S.C. § 207(r)(1) ................................................................................................. 3

42 U.S.C. § 2000e ..................................................................................................... 8,9

*State Statutes:*

43 P.S. § 955 ............................................................................................................ 14


*Other Materials:*

U.S. Dept. of Labor, Fact Sheet #73: Break Time for Nursing Mothers ..................................... 3

## I.    <u>INTRODUCTION</u>

This case is about an employer rewriting the rules to exclude a nursing mother from the workplace and then retaliating against her for exercising her rights. Plaintiff Madison Weaver returned from maternity leave asking for nothing more than what the law guarantees: a reasonable break when she needed to express breast milk, and a private space to do so near her workstation. Defendants refused, declaring that "pumping during operations was not an option" and insisting she limit herself to 30 minutes per day, an invented policy with no basis in law. When Plaintiff exercised her rights, complained to the Department of Labor (DOL), and filed a charge with the EEOC, Defendants responded with written warnings, suspension, and ultimately a pretextual termination under the guise of "job abandonment."

Defendants, by ignoring disputed facts, misstating the law, and treating Plaintiff's medically necessary breaks as a personal whim, now ask this Court to grant summary judgment. Their motion rests on factual contradictions, claiming they accommodated Plaintiff while their own emails, discipline records, and DOL correspondence show otherwise, and on legally defective arguments already rejected at the motion to dismiss stage. Plaintiff has produced substantial evidence that Defendants violated the FLSA's lactation break requirements, discriminated against her based on her sex and pregnancy in violation of Title VII and the PHRA, and retaliated against her for asserting her rights. From contemporaneous write-ups that punish her for pumping, to DOL findings instructing Defendants to change course, to documented efforts by Plaintiff to return to work, the record is not only genuine, it is dispositive in Plaintiff's favor.

As set forth more fully below, since a reasonable jury could find that Defendants' conduct was not lawful policy enforcement but unlawful discrimination and retaliation, summary judgment must be denied.

## II.    <u>STATEMENT OF MATERIAL FACTS</u>

Plaintiff incorporates by reference the facts outlined in her complaint as well as those agreed to in Defendants' statement of undisputed facts and Plaintiff's responses thereto. Citations to the transcripts appear in the following format: Gayle Dep. at 74:8-18 or Gayle Dep. 74:8-18, where "Gayle Dep." is the identifier of the transcript, "74" is the page number in that transcript, and "8-18" are the lines on the page.

## III.    <u>LEGAL STANDARD ON SUMMARY JUDGMENT</u>

The moving party in a motion for summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact in the case. *See* Fed. R. Civ. P. 56(a).  *See also*, *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury, considering the evidence presented, could find for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). A factual dispute is "material" if there is a possibility it could affect the outcome of the case. *Id.* The movant "bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

"When deciding a summary judgment motion, a trial court's function is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather to determine whether drawing all reasonable inferences from the evidence presented in favor of the nonmoving party, a fair-minded jury could find in the non-moving party's favor." *Wesley v. Hollis,* 2007 WL 1655483 (E.D.Pa., 2007). All facts and reasonable inferences must be viewed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the record as a whole could lead a rational trier of fact to find in favor of the non-

moving party, summary judgment is not appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, genuine issues of material fact exist which necessitate a hearing in this matter. Therefore, Defendants' motion should be denied.

## IV. <u>LEGAL ARGUMENT</u>

### A. Since Defendants violated FLSA and genuine issues of fact exist, Defendants' motion for summary judgment must be denied. (Count I).

29 U.S.C. § 207(r)(1) provides:

(r)  Reasonable break time for nursing mothers.

(1)  An employer shall provide--

(A)  a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth **each time such employee has need to express the milk**; and

(B)  a place, other than a bathroom, that is shielded from view and free **from intrusion from coworkers and the public**, which may be used by an employee to express breast milk.29 USCS § 207

29 U.S.C. § 207(r)(1)(emphasis added).

The statute does not limit the frequency or timing of breaks, rather, the touchstone is the employee's need to express milk. *Id.*; see U.S. Dept. of Labor, Fact Sheet #73: Break Time for Nursing Mothers (noting that "The frequency and duration of breaks needed to express milk will likely vary depending on factors related to the nursing employee and the child."). Employers are not required to pay for such breaks (if they are truly separate from paid rest periods), but critically, an employer's compliance with minimum wage/overtime pay is not a defense to failing to provide breaks. See *Dajti v. Empire Acquisitions, LLC*, No. 18-2043, 2021 WL 1209835, at *8-10 (D.N.J. Mar. 31, 2021). Moreover, an employer's failure to provide required pump breaks could be remedied via FLSA's provisions. *Id.* In short, the law protects a nursing mother's right to

reasonable[1] breaks when needed and a proper space to use, and an employer cannot escape liability simply by pointing to wages. *Id*.

Here, the FLSA required GAT to provide Plaintiff with reasonable break time "each time such employee has need to express breast milk" and a suitable private space in which to do so. Despite knowing Plaintiff's need to pump roughly every three (3) hours, GAT refused to allow breaks at the times needed by Plaintiff and forbade her the use of a convenient private space, forcing Plaintiff to wait until it was physically unbearable and then disciplining her for taking her needed breaks. A reasonable jury could easily find that GAT failed to provide the "reasonable break time" and functional space mandated by 29 U.S.C. § 207(r). Defendants' two arguments: (1) that they technically complied by affording some break opportunities, and (2) that Plaintiff has no "compensable injury" because she was paid above minimum wage, both misstate the law and ignore key facts. Indeed, this Court already rejected Defendants' "no injury" theory at the motion to dismiss stage. (ECF No. 25 at 13–18.) Now, with even stronger evidence of non-compliance and disregard of the law, Plaintiff's §207(r) claim plainly merits a trial.

The "Break Time for Nursing Mothers" provision of the FLSA in effect at the time of Defendants' violations imposes a clear duty on employers which was breached in this matter. As this Court held when denying Defendants' motion to dismiss at the F.R.C.P. 12(b)(6) phase, the fact that Plaintiff may not have a hefty wage loss "does not in itself entitle defendants to dismissal" of a §207(r) claim. (ECF No. 25 at 16, quoting *Dajti*, 2021 WL 1209835, at *10.) The adequacy

---

[1] *Walls v. Abington Surgical Ctr*., 758 F. Supp. 3d 376 (E.D. Pa. 2024), which GAT heavily relies upon, is distinguishable from this matter. In *Walls*, an operating-room nurse's pumping breaks were occasionally delayed or cut short due to unpredictable surgeries, and the court found those "occasional minor adjustments" did not violate §207(r). Here, by contrast, Ms. Weaver faced a pattern of denied or significantly delayed breaks (not mere minor timing adjustments) even during planned downtime between flights. Moreover, unlike the employer in Walls, GAT's managers actively discouraged Ms. Weaver's continued employment as a nursing mother, telling her to "take leave while breastfeeding" and refusing to discuss or provide workable accommodations. A jury could therefore find GAT failed to provide reasonable break times, violating §207(r).

4

of the breaks and space provided is a fact question for the jury. (ECF No. 25 at 17–18.)

Viewing the facts most favorably to Ms. Weaver, a jury could conclude that GAT brazenly violated §207(r). By its plain terms, the statute required GAT to allow Plaintiff a reasonable break "each time" she needed to pump. Yet GAT, by its own admission, forbade Plaintiff from taking any breaks during flight operations, even when her need to express breast milk was urgent. Defendant Gayle bluntly told Plaintiff that pumping while flights were boarding/running was "no longer an option." This blanket prohibition flatly contradicts the FLSA's mandate, which contemplates that breaks will occur even during a continuous work period if the mother needs it. Nothing in §207(r) says "reasonable break time, except when it's inconvenient for the employer."

While §207(r) does allow consideration of what is "reasonable" in context, GAT's approach was patently unreasonable. Plaintiff was expected to wait 3½ to 4+ hours between pumping (from 3:00 p.m. start to 5:30 or 7:15 p.m.), no matter her discomfort or risk of infection, blocked duct, or the like. Moreover, the DOL investigator's correspondence underscored that GAT's schedule did not comply, because the long planned break "does not correspond to either of the break times which are needed by Ms. Weaver," i.e. 4:30-4:45 and 7:30-7:45 p.m. The investigator instructed GAT that it "must come up with a solution," such as providing coverage or adjusting assignments, to let Plaintiff pump at those times. While GAT would adjust coverage for other employees in other situations, GAT never made an attempt to adjust coverage to accommodate Plaintiff's pumping needs. GAT "believe[d] this [coverage] would be an unreasonable financial burden" and "did not believe" allowing a break during a flight was "reasonable." In effect, GAT unilaterally decided that complying with the law was too inconvenient and simply refused. A jury does not need to take the DOL's word for it. The direct evidence is GAT's own stance. For example, when Plaintiff asked to pump at 4:30 on June 30, Defendant Gayle made her wait nearly an hour until 5:24, by which time Plaintiff was in pain, just because paperwork needed filing. When Plaintiff asked to pump at 4:30 on July 1, management

5

again forced her to wait until 5:30, even though Plaintiff's body could not. On July 7, Plaintiff was told to wait an extra 45 minutes (4:45 to 5:30) and then punished for not waiting. (Ex. 5 at GAT000136-137.) This pattern shows that GAT consistently denied Plaintiff reasonable break time at "each time she had need." Instead, GAT only permitted breaks on its preferred schedule (once between flights, and once after the second flight). If Plaintiff's natural needs didn't align with that schedule, which they often did not, GAT's position was essentially "too bad."

Also, a jury could find that the location GAT provided was not "close to Plaintiff's work area" or free from intrusion in practice. GAT forced Plaintiff to use a Mother's Room on the far side of the terminal, entailing about 15 minutes of travel through security and by tram. Requiring such travel is itself a burden that shortens the actual pumping time or extends the break needlessly. GAT had a room close to the work area, the empty office/breakroom near the ticket counter, but arbitrarily disallowed Plaintiff from using it. Their excuse was that the room stored files and was shared space. But Plaintiff only needed the room for 20-30 minutes at a time, and it could be locked or vacated by others temporarily. Other than "inconvenience," GAT had no valid reason that the office could not be repurposed as a private space for brief intervals.

It is clear under the law that a nursing mother is entitled to reasonable breaks "each time" she needs to pump. GAT's own communications (both internal and with the DOL) reveal that, in practice, they did not allow breaks each time Plaintiff needed, they allowed breaks only when it suited them, and even then penalized Plaintiff for taking them. Defendants' strawman argument that Plaintiff wanted breaks "whenever she pleased" mischaracterizes her position; she wanted breaks whenever she physiologically needed, which is exactly what §207(r) protects. GAT's refusal to accommodate those needs, and its discipline of Plaintiff for exercising her rights, constitute a textbook violation of the FLSA. The jury should be permitted to so find, and therefore, Defendants' motion should be denied.

**B. Since Defendants discharged and discriminated against Plaintiff for engaging in protected activity under the Act, Defendants' motion for summary judgment as to FLSA retaliation must be denied. (Count II).**

29 U.S.C. §215(a)(3), makes it unlawful for an employer to discharge or discriminate against an employee because she "filed any complaint" or otherwise engaged in protected activity under the Act. To prove FLSA retaliation, a plaintiff must establish (1) that she engaged in a protected activity, (2) that her employer took an adverse employment action against her, and (3) causation between her protected activity and the employer's adverse action. Rhoades v. Young Women's Christian Ass'n, 423 F. Appx. 193, 198 (3d Cir. 2011). The Third Circuit has broad view of what constitutes an adverse employment action. *Newsome v. City of Phila.*, 500 F. Supp. 3d 336, 341-42 (E.D. Pa. 2020) citing *Henley v. Brandywine Hosp.*, LLC, No. 18-4520, 2019 U.S. Dist. LEXIS 122851, 2019 WL 3326041, *9-10 (E.D. Pa. July 24, 2019) (explaining various kinds of adverse employment actions, such as "[t]ermination, failure to promote,[ ] failure to hire[,] ... [and] actions  that reduce opportunities for promotion or professional growth can constitute adverse employment actions" (quoting *Walker v. Centocor Ortho Biotech, Inc*., 558 F. App'x 216, 219 (3d Cir. 2014))) (Baylson, J.).

Here, Plaintiff engaged in prototypical protected activity when she complained to her supervisors and HR about her right to pump (a right arising under §207(r)), filed a complaint with the Department of Labor's Wage & Hour Division reporting GAT's violation, and sent text messages, emails, and had conversations with management regarding her rights under the Act. Defendants do not seriously dispute that these acts are protected. Nor can they dispute that Plaintiff suffered adverse actions: she was disciplined, suspended, and ultimately terminated (under the pretextual label of "job abandonment"). The core issue for retaliation is whether a jury could find a causal connection between Plaintiff's FLSA-related complaints and these adverse actions. The answer is a resounding yes. The timeline alone raises a strong inference of causation. Plaintiff

contacted the DOL and internally asserted her FLSA rights in late June 2022, and within a matter of days she was written up for the first time in her tenure, then subjected to escalating punishment, and by mid-August was fired. Moreover, Plaintiff can show that Defendants' supposedly legitimate reason for the termination (her "insubordination" or absences) was a pretext. Defendants' motion tries to re-frame the facts as if Plaintiff was terminated solely for misconduct unrelated to her complaints. But the record, viewed favorably to Plaintiff, tells a different story: GAT was content with Plaintiff's job performance until she began insisting on her nursing breaks; then GAT's managers became increasingly hostile, fabricating discipline and forcing her out under dubious circumstances. At the very least, these are fact questions inappropriate for summary judgment.

Plaintiff has raised genuine disputes on her FLSA retaliation claim. Defendants' motion seeks to have this Court believe their actions were all about neutral rule enforcement. But the record, when credited in Plaintiff's favor, tells a retaliatory tale. It is simply not credible that an exemplary employee suddenly turned into a fireable offender only after she began championing her legal rights to pump breast milk for her newborn child. Because a factfinder could find Defendants' excuses pretextual and determine that Plaintiff was suspended and fired in retaliation for complaining to management, HR and the DOL about FLSA violations, summary judgment on Plaintiff's FLSA retaliation claim should be denied.

### C. Since genuine issues of material fact exist, Defendants are not entitled to summary judgment on Plaintiff's Title VII sex/pregnancy discrimination claim. (Count V).

Title VII prohibits employers from discriminating against employees "because of their sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act clarified that "because of sex" includes discrimination based on pregnancy, childbirth, and "related medical conditions." 42 U.S.C. § 2000e(k). The Pregnancy Discrimination Act ("PDA") amended Title VII to prohibit

discrimination "because of sex" on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k). Lactation – the production of breast milk – is a physiological condition directly stemming from childbirth, and treating a female employee adversely due to lactation is squarely pregnancy discrimination under Title VII. See *EEOC v. Houston Funding II, Ltd*., 717 F.3d 425, 428 (5th Cir. 2013) ("firing a woman because she is lactating or expressing breast milk is unlawful sex discrimination under Title VII").

Here, Plaintiff has adduced evidence that GAT, and its managers Gayle, Followell, and Beaty, subjected her to adverse employment actions (discipline, suspension, termination) because of her status as a nursing mother and the concomitant need to express milk. They effectively imposed a condition on her employment that no male employee, and no non-lactating employee had ever prior to Ms. Weaver, nor would ever face: choose between your job and your ability to breastfeed your child. When she could not meet that impossible standard, they forced her out. This is classic disparate treatment on the basis of sex. Defendants' argument that they "treated Plaintiff better than others" is unsupported and unsupportable. Defendants disciplined and fired Plaintiff for taking medically necessary breaks that male or non-lactating employees simply do not require. A jury could easily find that but for Plaintiff's sex (female) and reproductive status (recently postpartum, lactating), she would not have been penalized as she was. At a minimum, there are genuine disputes of fact about Defendants' motives. Defendants' motion for summary judgment, therefore, should be denied.

Plaintiff is a woman who, at relevant times, was pregnant and then a nursing mother, thus within the protected class of the PDA (which includes postpartum lactation as a related medical condition). She was qualified for her job, as evidenced by her satisfactory performance for months before these issues (no indication of incompetence, and she successfully handled her duties until hindered by lack of breaks). Also, Plaintiff suffered adverse employment actions: suspension and termination (as well as write-ups that paved the way for termination). These are indisputably

adverse. Moreover, several facts establish an inference of discrimination. Specifically, Plaintiff was subjected to discipline directly because of actions necessitated by her lactation. The July 3 warning and July 22 warning both explicitly cite her pumping-related behavior (leaving post to pump, using a certain room to pump) as misconduct. In effect, GAT wrote her up for being a breastfeeding mother who needed accommodation. Punishing a woman for an activity intrinsically tied to her sex (only females lactate) raises a prima facie inference of sex discrimination. While Defendants may argue the difference is "operational impact," the fact remains that only women face that conflict between bodily necessity and work in this context.

In addition, Plaintiff testified that she was encouraged to take leave because she was nursing. Defendant Gayle essentially suggested that because Plaintiff had a baby and needed to express milk, maybe she shouldn't be working at all. This is an alarming statement reflecting stereotyped bias, i.e., that a mother of an infant should stay home if she can't fit into the company's pre-baby mold. Such a suggestion was specific to Plaintiff's mothering status. In addition, Defendant Beaty's remarks in the June 28 meeting provide evidence of discriminatory attitude. She chastised Plaintiff for being "emotional" due to her life stage of having a newborn. Labeling a woman as over-emotional when she asserts her needs is a gender-based trope. A reasonable jury could take that as evidence that Beaty did not take Plaintiff seriously because of her status as a lactating new mother. Additionally, Beaty's dismissive tone ("you're not a lawyer…") in response to a woman citing her rights can reflect a lack of respect for women asserting workplace rights related to pregnancy. Moreover, there is evidence that GAT was inflexible with Plaintiff in ways they were not with others for different issues. For instance, GAT's own policy allowed 30-minute breaks for all, and many employees took longer breaks between flights for personal tasks. Yet when Plaintiff needed specific timing for her breaks, management rigidly refused to adjust staffing or timing, even though the DOL suggested simple fixes. As to the pretextual termination reason of "job abandonment" proffered by Defendants, if the jury concludes it was a pretext, they could find

the underlying motive was in part hostility to Plaintiff's protected status (being a nursing mother).

**D. Since Plaintiff experienced severe and pervasive treatment creating a hostile work environment, Defendants' motion for summary judgment must be denied. (Count VI).**

Title VII prohibits harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, VSF v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986) (internal citations omitted). Title VII is not intended as a "general civility code," and requires that "conduct must be extreme" to constitute the kind of "change in the terms and conditions of employment" the statute was intended to target. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (internal citations omitted). To establish a prima facie claim for hostile work environment claim, a Plaintiff must show "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Huston v. Procter & Gamble Paper Prods. Corp*., 568 F.3d 100, 104 (3d Cir. 2009) (internal citations omitted). The Supreme Court has instructed lower courts "to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787-88 (internal citations omitted).

Here, over the span of her brief return to work (late May to early July 2022), Plaintiff was subjected to a continuing pattern of hostile and degrading treatment centered on her sex-specific needs. Management consistently blocked her from addressing a basic bodily function, causing her physical pain and emotional distress. They openly admonished her for breastfeeding ("pumping

during operations was not an option"), belittled her in front of colleagues (sending her home mid-shift as an example), and made derogatory comments (calling her "emotional," implying she should stay home). The cumulative effect was an environment where Plaintiff felt humiliated, scared to even mention her needs, and ultimately was forced out and terminated. A reasonable female employee in Plaintiff's position could certainly find the workplace abusive and hostile. Due to Defendants' conduct, Plaintiff's work environment was so hostile to her pumping that she physically could not perform her job without suffering. Moreover, because the harassment came from supervisors (Gayle, Followell, Beaty), GAT is vicariously liable absent an affirmative defense that is inapplicable here since the hostility resulted in the tangible adverse employment action of termination).

Defendants argue Plaintiff only alleges discrete acts (denial of breaks, discipline) rather than an ongoing environment. That is incorrect. The evidence shows a pattern from late May to early July 2022 where every shift became a gauntlet of harassment for Plaintiff. She was regularly told "no" when requesting a perfectly reasonable accommodation, often in a curt or scolding manner. She experienced multiple humiliating incidents including being scolded over the radio/text in front of others for pumping, being publicly sent home mid-shift on July 7 so that co-workers (and even the airline client's rep) saw her effectively escorted out for pumping, and being falsely portrayed as a rule-breaker. Additionally, management's demeaning comments, like calling her emotional, implying she's ignorant of the law, were deeply hurtful and undermining, as Plaintiff testified. This was not a one-off bad day; it was a steady drumbeat for weeks: Each time Plaintiff needed to pump (which was every shift), she faced confrontation or fear of reprimand. The pervasiveness is evident: seven separate days in one month where she couldn't pump when needed, multiple write-ups, constant tension. As Plaintiff put it, she was "walking on eggshells" and felt she had to fight with them for her right to breastfeed every time she came into work.

There is a genuine issue of material fact as to whether Plaintiff's work atmosphere was

12

"hostile," since evidence supports both an objective and subjective finding of hostility. Plaintiff has presented evidence of frequent, humiliating, and harmful treatment because of her sex/pregnancy status. Viewing the evidence in Plaintiff's favor, a jury could find that Defendants' conduct was both severe (causing medical harm and eventual job loss) and pervasive (repeated each shift). Therefore, summary judgment on the hostile work environment claim is unwarranted and Defendants' motion should be denied.

> **E. Since Plaintiff experienced retaliation as defined in Title VII after she engaged in protected activity, Defendants' motion for summary judgment should be denied. (Count VII).**

Plaintiff's Title VII retaliation claim (Count VII) largely parallels her FLSA retaliation claim and is analyzed in the same manner. See, e.g., *Cononie v. Allegheny General Hosp.*, 29 F. App'x 94 (3d Cir. 2002).

Here, the record is replete with retaliatory examples under Title VII after Plaintiff engaged in protected activity in mid-July 2022, where she filed an EEOC charge alleging sex/pregnancy discrimination and by complaining internally (to HR) that she believed she was being discriminated against. Shortly thereafter, Defendants intensified their adverse actions: they removed her from the schedule, issued an additional write-up, and ultimately terminated her about one month after the EEOC charge. The temporal proximity (within 4-5 weeks) and the pattern of antagonism (false accusations of refusing to return, stonewalling her requests) present a classic retaliation fact pattern. Defendants' proffered reasons for termination (already discussed) are riddled with inconsistencies. A reasonable jury could conclude that Plaintiff's complaints about discrimination were reason Defendants fired her under pretextual grounds. Therefore, summary judgment on Count VII is inappropriate and Defendants' motion should be denied.

**F. Since Defendants have violated the Pennsylvania Human Relations Act (PHRA)'s provisions prohibiting Discrimination and Retaliation, Defendants' motion for summary judgment should be denied. (Count X and XI).**

The PHRA makes it unlawful for an employer to discriminate against an individual in the terms or conditions of employment because of sex (which includes pregnancy and related conditions). 43 P.S. § 955(a). It also prohibits retaliating against any person for opposing practices forbidden by the Act or for filing a complaint. 43 P.S. § 955(d). Courts interpret these provisions in parity with Title VII. See *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 (3d Cir. 2006).

As set forth above, Defendants have discriminated against Plaintiff on the basis of her sex and have retaliated against her for engaging in protected activity, and therefore are in violation of those analogous provisions of PHRA. Moreover, genuine issues of material fact in this regard exist which necessitate trial in this matter. Therefore, Defendants' motion for summary judgment should be denied.

**G. Defendants Gayle, Followell, and Beaty (the individual Defendants) are each properly held liable under PHRA § 955(e) for aiding and abetting the unlawful discrimination and retaliation against Plaintiff, therefore Defendants' motion for summary judgment should be deined. (Count XII).**

The PHRA provides in relevant part as follows:

It shall be an unlawful discriminatory practice...

(e) For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 P.S. § 955(e).

In essence, this provision imposes personal liability on those individuals who actively participate in the employer's discrimination or retaliation. See *Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996).

Here, Defendants Gayle, Followell, and Beaty each played an affirmative, substantial role in the discrimination and retaliation Plaintiff suffered. Christina Gayle was the General Manager with supervisory authority over Plaintiff and was the architect of many of the policies/practices at issue. She directly told Plaintiff she could not pump during operations and only got "30 minutes a day," which is an unlawful limitation. Gayle personally issued the disciplinary warnings and made the decision (with HR) to categorize Plaintiff as having abandoned her job, i.e., to terminate her. In doing all this, Gayle certainly "aided and abetted" the violation of Plaintiff's rights. Indeed, Defendant Gayle was the primary perpetrator on the ground. If GAT is found liable for discrimination or retaliation, Gayle's intimate involvement means a jury could find she knowingly assisted in the commission of those illegal acts.

Defendant Holly Followell was Plaintiff's direct supervisor and also engaged in discriminatory/retaliatory acts. She enforced the no-pumping rule on July 7, 2022 explicitly telling Plaintiff she couldn't leave and then reported Plaintiff's violation in a manner that prompted discipline (writing the incident email that justified sending Plaintiff home and cautioning she might be fired. Followell also was the one who texted Plaintiff on August 10, 2022 demanding the return of her badge, effectively communicating that Plaintiff was out of a job. A reasonable jury could find that Followell aided or abetted the discrimination by enforcing the discriminatory break restrictions and by participating in the retaliatory campaign (e.g., warning Plaintiff on July 7, 2022 that if she couldn't "fulfill duties" she shouldn't come, which led to her suspension). Followell's active role in carrying out the adverse actions (writing up incidents, sending Plaintiff home, etc.) was instrumental to GAT's unlawful conduct.

Defendant Wilma Beaty's liability is perhaps most obvious. As Chief HR Officer, she was fully aware of Plaintiff's protected status and complaints, yet she not only failed to remedy the situation, she exacerbated it. In the June 28 meeting, Beaty provided misinformation and "snarky" comments that emboldened the continued denial of rights. Then, after Plaintiff complained to the

15

DOL/EEOC, Beaty effectively orchestrated the corporate response: she corresponded with DOL in a combative manner, and internally, she rebuked Plaintiff's attempts to return by lying that Plaintiff had refused an offer to return. Misrepresenting facts to justify keeping an employee out of work is classic aiding/abetting of retaliation. Further, as the top HR official, Beaty likely had involvement or even oversight of the final termination decision. Even if one were to argue that Gayle decided, Beaty's counsel was guiding it. Her email on Aug. 2 to DOL offering to pay for early pumping, etc., and the follow-up communications show she was intimately involved in the strategy of how to handle Plaintiff. When that "strategy" shifted to termination, Beaty did nothing to stop it and had every reason to facilitate it, thereby failing in her duty under PHRA to avoid knowingly approving or furthering discriminatory acts.

A jury reviewing the conduct of Defendants Gayle, Followell, and Beaty could readily conclude that each "aided or abetted" the discrimination and retaliation against Ms. Weaver in violation of PHRA §955(e). These defendants cannot wash their hands of responsibility. They were not bystanders, rather, they were active participants. Accordingly, Defendants' motion for summary judgment should be denied, and each individual Defendant should be held to answer for their role in this egregious treatment of Plaintiff.

## V.    <u>CONCLUSION</u>

Defendants' Motion for Summary Judgment should be denied in its entirety. Plaintiff has presented substantial evidence creating genuine issues of material fact on all counts. She requests the opportunity to present her case and these genuine issues of material fact to a jury and holding Defendants accountable under the FLSA, Title VII, and PHRA for their unlawful actions against her as a nursing mother in the workplace.

Thank you for your time and attention to these issues.

Dated: August 14, 2025                    Respectfully submitted,

                                          **DEREK SMITH LAW GROUP, PLLC**
                                          _/s/ Timothy J. Prol_
                                          Timothy Prol, Esq.
                                          Derek Smith Law Group, PLLC
                                          1628 Pine Street
                                          Philadelphia, PA 19103
                                          tim@dereksmithlaw.com
                                          _Attorneys for Plaintiff Madison Weaver_

17