IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MADISON WEAVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-869 |
| ) | Judge Nora Barry Fischer |
| GAT AIRLINE GROUND SUPPORT, ) | ECF No. 82 |
| INC.; CHRISTINA GAYLE; HOLLY ) | |
| FOLLOWELL and WILMA BEATY ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION FOR RECONSIDERATION**

**I.    INTRODUCTION**

This action arises from a series of disagreements between a newly post-partem nursing mother and her employer concerning provision of breaks for pumping breastmilk, and culminating in termination of her employment. The facts, claims and defenses referenced herein are discussed at length in the Court's September 15, 2025 Memorandum Opinion on Defendants' Motion for Summary Judgment (Docket No. 80). Therein, the Court granted Defendants' request for summary judgment as to Plaintiff's claim under the Fair Labor Standards Act, 29 U.S.C. § 207(r) at Count I, but denied their request for judgment as to Plaintiff's remaining claims for retaliation, sex discrimination and hostile work environment. (*Id.;* Docket No. 81).[1] Defendants have moved for reconsideration of all unfavorable rulings in the Court's Memorandum Opinion. (Docket No.

---

[1] As detailed in the Court's Memorandum Opinion on summary judgment, the Court had previously granted Defendants' Partial Motion to Dismiss as to Plaintiff's claims under (a) the Providing Urgent Maternal Protections ("PUMP") for Nursing Mothers Act, Pub. L. No. 117-328, § 102(a)(1), 136 Stat. 6093, 6093 (2022), at Counts III and IV and (b) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102 et. seq., at Counts VIII and IX. (Docket No. 80 at 1, n.1) (citing Docket No. 25).

82). The parties have briefed the matter, and it is ripe for adjudication. (Docket Nos. 83, 85-1, 86). For the reasons that follow, Defendants' Motion for Reconsideration will be denied.

## II.     APPLICABLE LEGAL STANDARD

Reconsideration of interlocutory orders is governed by Rule 54(b) of the Federal Rules of Civil Procedure, which provides in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P 54(b).  *See also, e.g.*, *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 298 (M.D. Pa. 2016), *quoted in Black Bear Energy Servs., Inc. v. Youngstown Pipe & Steel, L.L.C.*, No. 2:15-cv-00050, 2017 WL 3481068, *2 (W.D. Pa. Aug. 14, 2017) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)."). "Compared to motions to reconsider *final* judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphasis in original).

However, "the discretion Rule 54(b) provides is not limitless.  For instance, courts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id.*; *see also, e.g.*, *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case".).

The Court of Appeals for the Third Circuit has explained the effect of the law of the case doctrine as follows:

> The law of the case doctrine does not limit a federal court's power; rather, it directs its exercise of discretion. The Supreme Court has elaborated on the scope and nature of this discretion:
>
>> A court has the power to revisit prior decisions . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'
>
> [*Christianson v. Colt Industries Operating Corp*., 486 U.S. 800, 817 (1988).] This Circuit has recognized several "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation. They include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.

*Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997) (citations omitted). *See also, e.g.*, *Coopers & Lybrand, LLP*, 322 F.3d at 167 (observing that law of the case doctrine "gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'") (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)); *Black Bear*, 2017 WL 3481068, *3 ("While district courts have more discretion in reconsidering interlocutory orders than in revising final judgments, the . . . Court of Appeals has held that '[t]he trial court must, of course, exercise this authority in a responsible way, both procedurally and substantively,' and that '[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions.'") (internal citations omitted) (quoting *In re Anthanassious*, 418 F. App'x 91, 96 (3d Cir. 2011).

### III.    DISCUSSION

#### A.    Retaliation

Although Defendants request reconsideration of the portion of this Court's Order that denied summary judgment with respect to Plaintiff's retaliation claims (Counts II, VII and XI), (Docket No. 82 at 1), any argument directed to those claims is absent from Defendants' brief. Indeed, beyond including them in their thrice-repeated listing of the claims that remain pending (as to all of which, Defendants desire reconsideration and a grant of judgment),[2] Defendants' brief fails to address the retaliation claims. In particular, the claims themselves are mentioned neither in Defendants' specification of purported "clear errors of law and fact" nor in the three sections of argument corresponding thereto. (Docket No. 83 at 2, 3-14). Nonetheless, on careful consideration, Defendants' brief reveals one assertion of error relevant to the retaliation claims: near the end, under a section objecting to the Court's "overly-deferential" review of the evidence, Defendants include a paragraph arguing that the Court "drew conclusions against GAT based on evidence that plainly contradicts an inference of animus". (Docket No. 83 at 13).

To place Defendants' argument in context: In Section V(B) of its Memorandum Opinion, the Court addressed Plaintiff's retaliation claims, and concluded its analysis of the evidence by finding that "Plaintiff has adequately supported a *prima facie* case of retaliation, based upon a combination of suggestive timing and ongoing, escalating antagonism." (Docket No. 80 at 22). Immediately thereafter, the Court included a footnote explicitly rejecting Defendants' contention that its evidence of continued efforts at accommodation "plainly contradicts an inference of animus":

> Defendants also contend that GAT's continued efforts to accommodate Plaintiff's pumping needs contradict any assertion of retaliatory animus. (Docket No. 64 at 18). However, construing the record in the light most favorable to Plaintiff, a jury could reasonably find that GAT's persistence in offering pumping breaks with

---

[2] (Docket No. 83 at 2, 14, 15).

4

> times or durations that did not meet Plaintiff's physiological needs does not belie a pattern of antagonism shown by its supervisory personnel and its disciplinary actions.

(Docket No. 80 at 22 n.31). Defendants now argue that in this footnote the Court "drew conclusions against GAT" based on its offers of accommodation. Defendants contend, in effect, that the Court held GAT's attempts to accommodate against it, as being "too 'persistent' and unhelpful". (Docket No. 83 at 14).[3] The Court did not, however, "draw conclusions" against Defendants based on their accommodation efforts; rather, it merely rejected Defendants' conclusion that those efforts were so probative of GAT's goodwill as to preclude an inference of discriminatory animus, even in the face of other evidence showing "a combination of suggestive timing and ongoing, escalating antagonism". (Docket No. 80 at 22).

Defendants fail to engage with the specific evidence discussed in the Memorandum Opinion with respect to timing or antagonism (beyond attaching the conclusory label "vague" to the latter), electing instead to reassert the same argument rejected by the Court in footnote 31, quoted above.[4] Without more, Defendants' position amounts to a contention that *any* offer of exclusive accommodations,[5] no matter how mismatched to Plaintiff's needs, necessarily outweighs *any* considerations of timing or antagonism, no matter how suggestive. In the Court's view, to state such a proposition explicitly is to lay bare its invalidity. Defendants did not offer any reason

---

[3] Nothing in the Court's language supports Defendants' contention that the Court found GAT's offers of accommodations to be "too" persistent. The Court concluded that the fact that GAT continued (or persisted in) its accommodation efforts is not necessarily sufficient to overcome other evidence supporting an inference of discriminatory animus.

[4] *Cf. Black Bear*, *supra*, at *2 ("A motion for reconsideration is not to be used to relitigate or 'rehash' issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made.") (citing, *inter alia*, *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998)).

[5] By "exclusive" accommodations, the Court means accommodations that, as Defendants emphasize, were offered to Plaintiff but not to other employees. *See* Docket No. 83 at 1 ("no other employees were offered such accommodations"), 4 ("GAT offered Plaintiff numerous accommodations that *were not* offered to other employees"), 13 ("GAT offered extended breaks and other accommodations not offered to other employees"), 14 ("GAT offered accommodations that no other employee received").

or authority in support of such an extreme position in their original briefing, nor do they attempt to correct that deficiency now. The Court therefore concludes the Defendants have failed to meet their burden to identify any clear error of fact or law with respect to denial of summary judgment on Plaintiff's retaliation claims, and reconsideration thereof will accordingly be denied.

The insufficiency of Defendant's argument with respect to Plaintiff's retaliation claims has implications for the balance of Defendant's reconsideration motion. Because the retaliation claims must be tried, the stated goal of Defendants' motion – "[t]o avoid the time and expense of a jury trial and eventual appellate review" – is unattainable even before the Court turns to Defendants' actual arguments. (Docket No. 83 at 2).

### B.  Sex Discrimination

The Court's Memorandum Opinion addressed – and upheld, for summary judgment purposes – two distinct theories underlying Plaintiff's claims of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended (Count V), and under the parallel provisions of the Pennsylvania Human Relations Act ("PHRA") (Count X). First, the Court found that Plaintiff sufficiently supported her theory that GAT's disciplinary actions against her, culminating in termination of her employment, were undertaken because of her sex. (Docket No. 80 at 23-26). Second, the Court also found sufficient support for Plaintiff's contention that GAT discriminated against her by declining to "shuffle around" other employees to cover for her pumping, when it "routinely" performed such shuffling to cover for other employees for other reasons. (Docket No. 80 at 26-28). In their reconsideration motion, Defendants skip past the first, more substantial of these theories, and address only the discriminatory accommodation theory.[6]

---

[6] This omission is perhaps not surprising, as the Court observed that analysis of Plaintiff's discriminatory discipline and termination theory "closely parallels that of her retaliation claim" and, as discussed above, Defendants also omit argument with respect to retaliation. (Docket No. 80 at 26).

6

As to discriminatory discipline and termination, Defendants concede that "[t]aking adverse actions based on [a] woman's breastfeeding is prohibited by the [Pregnancy Discrimination Act ('PDA'), 42 U.S.C. § 2000e(k)]". (Docket No. 83 at 4 n.2) (quoting *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1260 (11th Cir. 2017)). This prohibition follows from a straightforward application of pertinent statutory law. As the Court of Appeals for the Fifth Circuit has explained,

> Title VII of the Civil Rights Act prohibits . . . discrimination on the basis of sex. . . . . . [In 1978] Congress amended Title VII to include the . . . PDA . . . . [which] provides that . . . "[t]he terms 'because of sex' or 'on the basis of sex' include . . . because of or on the basis of pregnancy, childbirth, or related medical conditions". . . . . [W]e hold that lactation is a related medical condition of pregnancy for purposes of the PDA. Lactation is . . . directly caused by hormonal changes associated with pregnancy and childbirth. . . . . [As an aspect] of female physiology that [is] affected by pregnancy, [lactation] seems readily to fit into a reasonable definition of "pregnancy, childbirth, or related medical conditions." . . . . [Therefore, an employee's claim that she was] discharged . . . because she was lactating or expressing milk states a cognizable Title VII sex discrimination claim. An adverse employment action motivated by these factors clearly imposes upon women a burden that male employees need not—indeed, could not—suffer.

*EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 427-430 (5th Cir. 2013) (*cited in* Docket No. 83 at 4 n.2) (internal quotation marks and citations omitted).

In the case *sub judice*, the Court held that "Defendants are not entitled to summary judgment on Plaintiff's discriminatory discipline and termination claims" because "Plaintiff's evidence suffices to create a triable issue as to whether [GAT's] proffered reasons [for disciplining and terminating her] constitute a pretext for discrimination based on Plaintiff's need to pump breastmilk". (Docket No. 80 at 26). Defendants offer no reason for the Court to reconsider this holding.

As to Plaintiff's discriminatory denial-of-accommodation theory, Defendants argue that the Court has "turn[ed] Title VII into an 'accommodation statute'" and "obligate[d] employers to give nursing mothers preferential treatment" (or even "most-favored-nation" status) by

7

"misconstruing Title VII and the PHRA to require employers to provide accommodations for nursing mothers that are not granted to any other class of employee". (Docket No. 83 at 2, 4, 5). Defendants contend that such preferential treatment endorsed by the Court includes requiring GAT to allow Plaintiff to "leave her post to express milk in the middle of operations" or even to "abandon her job duties." (Docket No. 83 at 4-5).

Defendants' ado notwithstanding, the Court has not adopted any preferential status for nursing mothers. Nor has it held that employers are required, by Title VII or the PHRA, either to (a) permit nursing mothers to abandon their posts or take breaks in the middle of operations, or (b) accord them any other accommodations that are not available to other employees.[7] Rather, the Court has merely interpreted a very spare record as to a very particular accommodation – "shuffling" employees among work stations – in the light most favorable to Plaintiff (as it must do in considering a motion for summary judgment).

The evidence on shuffling is not extensive, to say the least. In response to questioning about Defendant's practices as to moving employees from their assigned area to assist at another area where they "weren't scheduled to work" or "weren't currently assigned", Defendant Holly Followell, a supervisor of Customer Service Agents for GAT, testified that employees "routinely" would be "shuffled around depending on need". Because the parties did not ask Followell to elaborate on this suggestive testimony, the Court is left with a relatively undeveloped record on the point.[8]

---

[7] Although Title VII and the PHRA do not by their terms entitle nursing mothers to any special accommodations not provided to other employees, the Court notes that special accommodations for lactation needs do appear to be mandated by the FSLA – but that issue is not currently before the Court. It also may well be that under the PDA, taking an adverse employment action against an employee because of her possession of a right under the FSLA to accommodations for pumping would amount to taking such an action on account of her sex – but again, that issue is not currently before the Court.

[8] A fuller distillation of Followell's testimony on the point is set forth in the Court's Memorandum Opinion. (Docket No. 80 at 27 n.42).

In their reply brief in support of summary judgment, Defendants sought to limit the scope of Followell's testimony, contending that it merely "describes *assigning employees before a shift* based on operational needs, such as when a flight was expected to be full". (Docket No. 77 at 7 n.5) (emphasis added). However, the Court rejected Defendants' contention, holding that Followell's testimony about shuffling, read in the light most favorable to Plaintiff, "refers to moving employees from their assigned post based on needs arising *during a shift*." (Docket No. 80 at 27 n. 42) (emphasis added). Although Defendants now challenge the Court's interpretation as "unsupported",[9] the Court adheres to its view, and notes that Defendants' contrary interpretation – limiting "shuffling" to pre-shift assignments – is difficult to reconcile with the testimony's subject of pulling people from their assigned area to an area to which they were not assigned.

In any event, the "shuffling" issue is a relatively minor one. *See* pp. 6-8, *supra*. Defendants will have an opportunity at trial to introduce evidence – perhaps from Followell herself – clarifying the scope and extent of GAT's "shuffling" practices; and if Defendants' interpretation is borne out in the trial testimony, they will have an opportunity at the close of Plaintiff's evidence to renew their request for judgment on Plaintiff's discriminatory accommodation claims (albeit under Fed. R. Civ. P. 50 rather than Fed. R. Civ. P. 56). As trial must proceed on Plaintiffs' claims for retaliation and for discriminatory discipline and termination, and clarification of Followell's "shuffling" testimony is unlikely to add materially to the burden or duration of trial, the Court concludes that even if its interpretation of that testimony for summary judgment purposes were in error, permitting Plaintiff's accommodation claims to remain, pending further development at trial,

---

[9] To be more precise, Defendants mistakenly characterize the Court's interpretation as a "conclusion that GAT 'routinely' allowed employees to take breaks in the middle of flight operations", and it is that conclusion that they label "unsupported". (Docket No. 83 at 5 n.3, 12). However, the Court expressed no conclusion whatsoever as to any evidence concerning the timing of employee breaks.

9

could not reasonably be viewed as working a manifest injustice. Accordingly, Defendants' request for reconsideration with respect to those claims will be denied.

### C.    Hostile Workplace

Defendants next seek reconsideration of this Court's denial of summary judgment on Plaintiff's hostile work environment claims. In support thereof, Defendants cite and summarize various reported cases in which such claims were rejected, and compare the facts of those case reports to the attested facts herein. (Docket No. 83 at 6 - 10).

This Court acknowledged in its Memorandum Opinion that the evidence of a hostile work environment in this case is less strong than in some cases. (Docket No. 80 at 30 n.48). On the other hand, the evidence herein appears stronger in at least some aspects than in some cases proffered by Defendants.[10]

Ultimately, the Court deems it unnecessary to parse the factual distinctions in all the cited cases (or in the broader universe of reported hostile work environment cases), in what may be a quixotic effort to draw a clear line between sufficient and insufficient evidence of hostility. For even were the Court to conclude on reconsideration that Plaintiff's evidence fell on the wrong side of such a line, the Court could *not* conclude that failure to correct any such error before trial would work a manifest injustice. As aforesaid, the Court has already determined that Plaintiff must be permitted to proceed with trial on her retaliation and discriminatory discipline and termination claims, and it appears to the Court that the evidence to show a pattern of antagonism (for purposes of the causation element of Plaintiff's *prima facie* retaliation and discrimination claims) will overlap substantially if not completely with the evidence to show a hostile work environment. Presentation of the evidence as to hostile work environment is therefore unlikely to materially

---

[10] For example, the evidence herein involves comments, directives and disciplinary sanctions by supervisors and administrators, rather than merely co-workers.

10

prolong, or otherwise increase the burdens of, trial. Moreover, the Court observes that where the burden of presenting the evidence is small, the benefit of deciding whether Plaintiff's work environment was "hostile" – a nuanced, mixed question of law and fact – on a more developed trial record (rather than a preliminary and perhaps abbreviated summary judgment record) weighs in favor of declining to exercise the Court's discretion to revisit its prior decision. Accordingly, Defendants' request for reconsideration as to this issue will be denied.

### D.    Deferential Reading of Evidence

Finally, Defendants contend that the Court applied "overly-deferential" review to Plaintiff's evidence by "[drawing] material factual conclusions in Plaintiff's favor that had no basis in evidence". (Docket No. 83 at 12). Defendants proffer five (5) purported examples of this erroneous standard of review, each of which the Court finds to be without merit.

First, Defendants object to the Court's consideration of Plaintiff's deposition testimony that referenced her Complaint, reasoning that "[a] nonmoving party may not simply replace the 'conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.'" (Docket No. 83 at 12) (quoting *Travelers Indem. Co. v. Fantozzi*, 825 F. Supp. 80, 83-84 (E.D. Pa. 1993)). However, Plaintiff's testimony herein was provided via video deposition, which is not equivalent to a conclusory affidavit. Indeed, her testimony was given in response to questioning by Defendants' counsel, who therefore had ample opportunity to inquire into the factual basis for any testimony deemed conclusory. In any event, the Court disagrees with Defendants' general characterization of the allegations in Plaintiff's Complaint or in her testimony as "conclusory". The Court notes that Defendants make no attempt to show any *particular* allegation(s) to be conclusory.

Second, Defendants argue that the Court improperly drew, from Followell's testimony about "shuffling", the "unsupported conclusion that GAT 'routinely' allowed employees to take

11

breaks in the middle of flight operations". (Docket No. 83 at 12). The Court has already addressed this argument at length, and rejected it. *See* pp. 7-9, *supra*.

Third, Defendants object to the Court's giving weight to Plaintiff's testimony as to her own physiological need to pump her breastmilk, despite Defendants' contention that her asserted need is contradicted by her pumping records, and unsupported by any medical records. (Docket No. 83 at 12-13). Under the Federal Rules of Evidence, Plaintiff is presumed to be a competent witness, and is permitted to testify to any matter as to which she has personal knowledge. *See* Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). *Cf.* Fed. R. Evid. 602 Advisory Committee Note (Rule 602 is derived from a common law rule "requiring that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact".). Here, it seems clear that a nursing mother is competent to testify to her own physiological need to pump.[11] Defendants do not actually argue to the contrary, nor do they proffer any reason or authority to support excluding a nursing mother's testimony as to her lactation or pumping needs. At bottom, Defendants' objection amounts to a

---

[11] A nursing mother's need to pump breastmilk is a byproduct of her lactation, which is "the physiological process of secreting milk from mammary glands and is directly caused by hormonal changes associated with pregnancy and childbirth." *Houston Funding*, 717 F.3d at 428. Moreover, according to DOL guidance, in order to avoid reduction in the mother's milk supply (and to avoid infection) breastmilk "must be removed by a pump about as frequently as the baby usually nurses" – which is expected to be about every two to three hours for a newborn child. (Docket No. 80 at 14 n.20). It would appear that Plaintiff had ongoing opportunities for firsthand observation of both her body's accumulation (and resulting secretion) of breastmilk, and the frequency of her baby's nursing. Indeed, such observations would ordinarily be inherent. That said, Plaintiff possesses the personal knowledge required for her to testify under Rule 602.

Moreover, even if a nursing mother's need to pump breastmilk at a particular time were to be treated as a matter of opinion (governed by Rule 701) rather than of observable fact (governed by Rule 602), Plaintiff would still be competent to testify to that need because such an opinion would be (a) "rationally based on [her] perception", (b) "helpful to . . . determining a fact in issue", and (c) "not based on scientific, technical, or other specialized knowledge". Fed. R. Evid. 701.

contention that the Court should reject Plaintiff's competent evidence, and accept in its stead Defendants' allegedly contrary evidence. Such an approach would turn summary judgment on its head. As discussed in the following paragraph, for summary judgment purposes the Court must resolve such factual disputes in favor of Plaintiff, the non-moving party.

Fourth, Defendants assert that the Court "appeared to make a determination as to the credibility" of statements in GAT's July 14, 2022 write-up of Plaintiff when it stated that said document "*falsely charged* that Plaintiff was 'refusing to work [her] schedule shifts unless [she] can walk away from [her] post whenever [she] would like.'" (Docket No. 83 at 13) (quoting Docket No. 80 at 11) (brackets in Court's Opinion; emphasis added by Defendants). But the Court did not make, or purport to make, any determination as to credibility. Instead, the challenged statement was part of a recitation of facts "evidenced of record and read in the light most favorable to Plaintiff as non-movant". (Docket No. 80 at 4). This practice is in keeping with the Supreme Court's summary judgment jurisprudence, which "does not direct judges to resolve questions of credibility" but instead requires them "to assess the sufficiency of the evidence as a matter of law, resolving all factual disputes in favor of the opponent". *See* W. Schwartzer, A. Hirsch & D. Barrans, *The Analysis and Decision of Summary Judgment Motions* at 61 (Fed. Judicial Ctr. 1991) (analyzing holding of *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242 (1986)). Plaintiff controverted statements in GAT's write-up through her own competent testimony. Because Plaintiff's contention that GAT's charges were false is supported by record evidence sufficient to support a jury finding in her favor, the Court must accept Plaintiff's version for purposes of ruling on summary judgment.[12]

---

[12] *Cf. Cuff v. Dept. of Corrections*, 2025 WL 1442706, *4 (3d Cir. 2025) ("[E]ven a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment.") (internal quotation marks and footnote omitted).

13

Fifth, Defendants argue that the Court "drew conclusions against GAT based on evidence that plainly contradicts an inference of animus". (Docket No. 83 at 13-14). Once again this argument has been addressed at length and rejected. *See* pp. 3-5, *supra*.

WHEREFORE, the Court enters the following Order:

## ORDER

AND NOW, this 14th day of October, 2025, upon consideration of Defendants' Motion for Reconsideration (Docket No. 82) as set forth above, IT IS HEREBY ORDERED that said Motion is DENIED in its entirety.

*/s Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf: All counsel of record